```
               THE UNITED STATES DISTRICT COURT
                          FOR THE
                     DISTRICT OF VERMONT


OSCAR LeCLAIR and                  :
THERESA LeCLAIR,                   :
          Plaintiffs,              :     Civil No. 2:10-CV-28
                                   :
     v.                            :
                                   :
THE NAPOLI GROUP, LLC and          :
NAPOLI NY CO.                      :
          Defendants.              :
```

**MEMORANDUM and ORDER**

This diversity action involves injuries sustained by Plaintiff Oscar LeClair when he slipped and fell on an icy walkway outside a McDonald's Restaurant owned and operated by Defendants.  Mr. LeClair, who alleges that he permanently lost the ability to walk as a result of the accident, has brought claims for negligence and premises liability.  His wife Theresa LeClair has brought a claim for loss of consortium.  The LeClairs have filed a motion for permission to communicate with current and former employees of Defendants, ECF No. 53, and a motion for a protective order commanding Defense Counsel to refrain from making unwarranted objections at depositions. ECF No. 62.  For the reasons set forth below, the motion for permission to communicate with current and former employees is **granted in part and denied in part**.  Plaintiffs' Counsel may attempt to communicate with Nicole Vito and Richard Whitaker, who have not

accepted representation by the firm representing Defendants, but may not have ex parte communications with those current and former employees who have entered into attorney-client relationships with this firm.  The motion for a protective order is **denied**.

**I. Motion for Permission to Communicate with Current and Former Employees**

In April 2011, Plaintiffs' Counsel contacted Defense Counsel and requested to depose certain individuals who were working at the McDonald's Restaurant at the time of Mr. LeClair's fall. Defense Counsel responded by indicating that they had been "retained to represent all present and former restaurant employees who might become witnesses in this case." Opp'n to Mot. for Permission to Communicate 3, ECF No. 60.  While Defense Counsel agreed to produce for deposition Jennifer Akey, Bruce Winterbottom and Robert McDougal, all of whom are current employees who have management duties and are therefore "party witnesses," Defendants assert that they have no obligation to produce non-managerial employees and former employees for deposition unless these witnesses are subpoenaed.  *Id*. at 4. Defense Counsel also asserts that, because they have established "independent attorney-client relationship[s]" with these non-managerial employees and former employees, Plaintiffs' Counsel may not have ex-parte communications with them.  *Id*.

The LeClairs argue that "Defendants should not be allowed to prevent Plaintiffs from interviewing [the non-managerial employees and former employees] . . . by merely claiming that they are represented clients." Mem. in Supp. of Mot. for Permission to Communicate 1, ECF No. 53-1. They now seek the Court's permission to have ex parte communications with these current and former employees.

As an initial matter, it is clear that Defense Counsel is correct that they have no obligation to produce non-managerial employees and former employees for deposition by notice. "Only a party to litigation may be compelled to give testimony pursuant to a notice of deposition." *United States v. Afram Lines, Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994). A "corporate employee or agent who does not qualify as an officer, director, or managing agent" is not considered a party and therefore "is not subject to deposition by notice." *Id*. at 413 (citing *GTE Products Corp. v. Gee*, 115 F.R.D. 67, 68-69 (D. Mass. 1987); *Sugarhill Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 169 (S.D.N.Y. 1985)).

It is also clear that to the extent that the firm representing Defendants has established attorney-client relationships with individual employees and former employees, Plaintiffs' Counsel may not interview these individuals without permission from that firm. Vermont Rules of Prof'l Conduct R. 4.2 ("In representing a client, a lawyer shall not communicate

about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."); D. Vt. L.R. 83.1(a)(2)(B)(iv), 83.1(b)(2)(B)(v) (admission to practice in District of Vermont requires familiarity with Vermont Rules of Professional Conduct).[1]  Therefore, the question on which this motion turns is whether the firm representing the Defendants has in fact established "independent attorney-client relationships" with the various current and former employees it asserts it has been "retained to represent."  Opp'n to Mot. for Permission to Communicate 4.[2]

---

[1] The New York Rules of Professional Conduct and the American Bar Association's Model Rules of Professional Conduct contain nearly identical provisions regarding ex parte communications with represented individuals.  *See* New York Rules of Prof'l Conduct R. 4.2; Model Rules of Prof'l Conduct R. 4.2.

[2] The primary case upon which the LeClairs attempt to rely, *Nieseg v. Team I*, 558 N.E.2d 1030 (N.Y. 1990), is a New York case which both parties seem to agree does not bind this Court.  *See* Reply in Support of Mot. for Protective Order 5, ECF No. 67 ("New York law may not be controlling of the federal discovery in this case, but it is certainly instructive."); Opp'n to Mot. for Permission to Communicate 3.  In any event, this case is inapposite.  In *Nieseg*, the New York Court of Appeals held that, for the purpose of determining which employees were not represented by the corporation's defense counsel and could therefore be informally interviewed by plaintiff's counsel as non-party witnesses, the operative test was whether the employee was one "whose acts or omissions in the matter under inquiry are binding on the corporation (in effect, the corporation's 'alter egos') or imputed to the corporation for purposes of its liability, or employees implementing the advice of counsel."  558 N.E.2d 1030, 1035 (N.Y. 1990).  There is no indication here that

Defense Counsel has indicated that the Defendants have "arranged for the representation" of "all present and former restaurant employees who might become witnesses in this case." Opp'n to Mot. for Permission to Communicate 3, 5. Defense Counsel has further represented that they have "verbally confirmed an attorney-client relationship with" current employee Angela Robert and with former employees Robert Smith, Brandon Marshall, Carrie Collins and Adrienne McMillon-Wilkinson. *Id*. at 2-3. The firm acknowledges that two other former employees, Nicole Vito and Richard Whitaker, "have [not] clearly accepted the firm's representation" but have received letters, sent via certified mail, notifying them that the firm has been retained to represent them. *Id*. at 5. The firm asserts that because neither Ms. Vito nor Mr. Whitaker have "affirmatively rejected" representation, Defense Counsel "believes that an attorney-client relationship with Ms. Vito and Mr. Whitaker exists." *Id*.

Based on the factual representations made in the opposition brief, the Court accepts Defense Counsel's representation that it has established attorney-client relationships with Ms. Roberts, Mr. Smith, Mr. Marshall, Ms. Collins and Ms. McMillon-Wilkinson.

---

the non-managerial employees Defendants have refused to produce for deposition by notice are the "alter-egos" of the organizational Defendants. *Nieseg* is also inapposite because, in that case, counsel for the defendant corporation made no claim that it had established independent attorney-client relationships with the non-party employees that would prevent ex parte interviews by plaintiff's counsel.

However, Defense Counsel has not met its burden of establishing the existence of attorney-client relationships with Ms. Vito and Mr. Whitaker.  *See Curley v. Cumberland Farms*, 134 F.R.D. 77, 93 (D.N.J. 1990) ("burden of establishing an attorney-client relationship is upon the party asserting its existence"); *Serrano v. Cintas Corp.*, No. 04-40132, 2010 U.S. Dist. LEXIS 18130, at *17 ( E.D. Mich. Mar. 2, 2010) (where plaintiff "had not carried its burden of demonstrating an attorney-client relationship with [] other [] class members, the court permitted the defendant to communicate with them ex parte").  In light of basic principles of contract law, the Court cannot find that an individual's failure to respond to a certified letter offering representation creates an attorney-client relationship.  *J. C. Durick Ins. v. Andrus*, 424 A.2d 249, 250 (Vt. 1980) ("The offeror cannot force the offeree to speak or be bound by his silence.  Silence gives consent only where there is a duty to speak." (internal quotation omitted)).

Because Defense Counsel has not established attorney-client relationships with Ms. Vito and Mr. Whitaker the motion for permission to communicate with these two individuals is **granted**.  Because Defense Counsel has established attorney-client relationships with Ms. Roberts, Mr. Smith, Mr. Marshall, Ms. Collins and Ms. McMillon-Wilkinson, the motion is **denied** with respect to them.

However, the Court must express some concern with the practice of what may be perceived as an attempt by one party's counsel to limit access to non-party witnesses by initiating attorney-client relationships with them.  It is true that there is no *per se* rule barring counsel from simultaneously representing a defendant organization and its individual employees in the same matter at the organization's expense. *Dunton v. County of Suffolk,* 729 F.2d 903, 908 n.4 (2d Cir. 1984); *see also All Star Carts & Vehicles, Inc. v. BFI Can. Income Fund*, No. CV 08-1816, 2010 U.S. Dist. LEXIS 53290, at *13-14 n.4 (E.D.N.Y. May 31, 2010) (collecting cases in which courts declined to disqualify counsel representing a party and a non-party witness in the absence of an actual conflict of interest); *Bonner v. Guccione*, No. 94 Civ. 7735, 1997 U.S. Dist. LEXIS 2184, at *2 (S.D.N.Y. Mar. 3, 1997) ("plaintiff has been unable to cite any civil case holding it to be improper for an attorney to represent both a defendant and its non-party employees"). Furthermore, the Court recognizes that, in some instances, it may be laudable for an employer to retain counsel to represent employees who would otherwise not be able to afford representation.  Nevertheless, as reflected in Canon 5 of the ABA Model Code of Professional Responsibility and Rule 7.1 of the Vermont Rules of Professional Conduct, a firm's representation of multiple clients in the same matter raises significant conflict

of interest concerns that may ultimately have an adverse effect on all of the clients.  For example, in the instant case, if it is discovered that one of the former employees now represented by Defense Counsel possesses information adverse to Defendants' interests, the firm may be required to withdraw from this case altogether, leaving the Defendants, as well as the current and former employees, with the task of securing new representation. *See* Model Code of Prof'l Responsibility DR 5-105 ("A lawyer shall not continue multiple employment if the exercise of his independent professional judgment on behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests[.]"); Vermont Rules of Prof'l Conduct R. 1.16 (requiring withdrawal where "the representation will result in violation of the rules of professional conduct").

**II. Motion for Protective Order**

The LeClairs' motion for a protective order stems from an exchange that took place during the deposition of Bruce Winterbottom, who was working as the manager of the McDonald's Restaurant on the day of Mr. LeClair's fall.  At that deposition, Plantiffs' Counsel asked Mr. Winterbottom the following series of questions:

> Q. At some point when you were -- after '86, was there some point when the restaurant itself was renovated or changed or modified, do you remember?

>    A. Between '86 and 2004?
>
>    Q. Yeah.
>
>    A. No.
>
>    Q. So the way the restaurant looked on the day of the accident in 2008 is the way that it looked in 1986?

Mot. for Protective Order 1-2.  Defense Counsel then objected, explaining he "d[idn't] like the form" of the last question. *Id.*[3]  After questioning the validity of the objection and suggesting that Defense Counsel was using the objection to attempt to coach the witness, Plaintiffs' Counsel terminated the deposition.  The LeClairs now seek a protective order instructing Defense Counsel to "refrain from making unwarranted objections at deposition, especially if their apparent purpose is to coach or suggest answer[s][.]"  *Id.* at 3.  They also ask the Court to award them costs and attorney's fees incurred in making this motion.

The LeClairs argue that the question to which Defense Counsel objected "went to the very essence of this case -- the way the handicapped ramp appeared in 2008 (and whether it had been changed since 1986)" and that "[t]here [was] no apparent defect with the form of the question that could be obviated" at the time of the deposition.  Mem. in Supp. of Mot. for Protective

---

[3] The parties had stipulated that "all objections to questions except as to form were reserved until the time of trial."  Opp'n to Mot. for Protective Order 1, ECF No. 65.

Order 7-8, ECF No. 62-2.  Defendants respond that the objection was proper because the question was "ambiguous, misleading, and overbroad."  Opp'n to Mot. for Protective Order 2, ECF No. 65.

The Court agrees that objecting to the form of the question was not improper because the question, as worded, was in fact ambiguous and overbroad.  As the LeClairs acknowledge in their own motion papers, the relevant purpose of this line of questioning was to assess whether the ramp on which Mr. LeClair fell had been altered since 1986.  However, Plaintiffs' Counsel asked the much broader question of whether "the restaurant looked on the day of the accident in 2008 [] the way that it looked in 1986[.]"  Because there were many respects in which the appearance of the restaurant as a whole may have changed between 1986 and 2008 that would be quite irrelevant to this case (for example the color of the bathroom tile), the question as worded was vague and it was not improper for Defense Counsel to object to the form.  Defense Counsel arguably could have provided a more detailed explanation of the objection in order to facilitate correction of the question.  However, where Counsel objects to the form of a question and then instructs the deponent to answer there is no affirmative obligation to further explain the objection.  *See* Fed. R. Civ. P. 30(c)(2) ("An objection must be stated *concisely* in a nonargumentative and nonsuggestive manner." (emphasis supplied)); *Applied Telematics v. Sprint Corp.*, No.

94-CV-4603, 1995 U.S. Dist. LEXIS 2191, at *4 (E.D. Pa. Feb. 22, 1995) ("'Objection to form' should be sufficient explanation to notify the interrogator of the ground for the objection, and thereby allow revision of the question.").

The LeClairs' motion for a protective order and for costs and attorney's fees incurred in making this motion is **denied**.[4]

Dated at Burlington, in the District of Vermont, this 23rd day of June, 2011.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge

---

[4] In the last sentence of their reply in support of the motion, the LeClairs ask, as an alternative to their request for a protective order instructing Defense Counsel to refrain from making improper objections, that the Court issue an order "that all objections to depositions be reserved until trial (except as to questions eliciting privileged information)." Reply in Support of Mot. for Protective Order 5-6.  The Court, which has found that the objection that prompted this motion was not improper, declines to enter such an order.

The Court also declines to impose conditions on the re-scheduling of the depositions as requested by Defendants in their opposition to the motion.  *See* Opp'n to Mot. for Protective Order 4.